*53 Vroom.* Potter Press Co. v. Newark Daily Adv. Pub. Co.

*For affirmance*—THE CHANCELLOR, GARRISON, TREN-CHARD, PARKER, BERGEN, VOORHEES, KALISCH, VREDEN-BURGH, CONGDON, TREACY, JJ. 10.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, MINTURN, BOGERT, WHITE, JJ. 5.

POTTER PRINTING PRESS COMPANY, PLAINTIFF, DE-FENDANT IN ERROR, v. NEWARK DAILY ADVERTISER PUBLISHING COMPANY, DEFENDANT, PLAINTIFF IN ERROR.

Submitted January 5, 1912—Decided June 20, 1912.

If under a contract for the purchase of a machine, the purchaser is not required to pay until it operates to his satisfaction, he is not bound to accept and pay for it until he is satisfied, unless the dissatisfaction is based upon some reason not connected with its operation, or is fraudulent in its nature. His contract is to accept and pay when he is satisfied with its operation, and he is not bound even if his dissatisfaction in that regard is to some extent unreasonable, but he cannot keep and use the machine and set up want of satisfaction to sustain a defence of partial failure of consideration or non-acceptance. He must either rescind and offer to surrender the machine, or accept it and rely for his remedy upon the recovery of such damages as he may be able to establish because of a breach of the contract.

On error to the Supreme Court.

For the plaintiff in error, *Pitney, Hardin & Skinner.*

For the defendant in error, *Vredenburgh, Wall & Carey.*

The opinion of the court was delivered by

BERGEN, J. By a contract in writing the plaintiff (defendant in error) agreed to furnish and install in the place of business of defendant a printing press for which defendant

agreed to pay. The plaintiff furnished, and the defendant retained, the press, and this suit was brought to recover the contract price. The plaintiff recovered a judgment, the propriety of which this writ seeks to review. The declaration of the plaintiff avers performance by it of all covenants on its part, except completion within the time stipulated in the contract, which it attempts to excuse because the defendant neglected to keep its premises in such condition as to enable the plaintiff to properly and expeditiously prosecute the work required by the contract; failed to properly and promptly prepare the foundation for the press as it had agreed, and also that the defendant waived the covenant as to time of completion. The covenants of the plaintiff required, among other things, that the press should be completed and shipped about March 30th, 1909, and erected on defendant's premises in good running order by April 20th, 1909, subject to any delays due to any cause, except such "as is within the control of the party of the first part, and all time so lost shall be an extension for such completion and shipment." Testimony was admitted, over objection by defendant, tending to show that in preparing the pit necessary to erect the foundation the defendant neglected to remove the excavated earth, but allowed it to remain after the foundation was finished which interfered with the work of installing the press; that the place was small and the space necessary for plaintiff's work was obstructed by the servants of the defendant engaged in its service, which also interfered with the prosecution of the work by the plaintiff, and that the foundation was not promptly put up by the defendant, all of which plaintiff claims were causes of delay not within its control. In addition to this the defendant urges that the plaintiff was allowed to prove, over objection, that the space afforded for working was not sufficient to enable it to assemble the parts of the press as conveniently as could have been done if a more ample space had been allowed, but a careful examination of the record relating to such testimony shows that it was admitted to support plaintiff's claim that the practice of the defendant in using what space there was in conducting its business was an interference with the work of the plaintiff.

Whether this was so in fact was a jury question. The issue was not the shape and size of the building in which the press was being installed, but whether the character of the occupation of the premises by the defendant was such as to amount to an unreasonable interference with the progress of plaintiff's work, because the plaintiff had contracted to install the press, within the time stipulated, in the premises of the defendant without any condition as to the size of or space within the building. On this point one of plaintiff's witnesses was asked, "*Q.* Did you see whether there was or not any interference with the erection of that press?" This question was objected to as immaterial because there was no claim in the declaration based upon interference. The court decided to admit the testimony, to which ruling the defendant prayed an exception, which was sealed, but the question was not answered.

The next question was an inquiry as to the condition of the premises, and the answer was confined to the amount of gravel and sand which the defendant had left, which the witness said interfered materially with putting up a fine piece of machinery. The witness was then asked, "What place was made for the location of your loose parts to enable you to assemble your machinery together, if any?" This question was objected to, allowed by the court, and an exception sealed, but it was not answered, and instead of it the following question was asked: "*Q.* How much space was there in the room of the defendant not occupied sideways, by this press that you were erecting there?" The answer was, "About eight feet." This latter question was objected to before it was answered, but no reason was given for the objection. From this statement of the case it would appear that the testimony given related entirely to the question of interference by the defendant with the work of the plaintiff, under the conditions existing which the plaintiff charged were created by the defendant, and is referred to because of its bearing upon the ruling of the court excluding a question propounded to a witness of the defendant which is one of the alleged errors argued by the defendant. The question which is the basis of this assignment was, "Before this contract was signed, did any representative of the

plaintiff ever visit your premises?" This question, being objected to, the court overruled it upon the ground that "both sides are assumed to have made that contract with their eyes wide open, and that unless you can show that the contract was impossible of performance, I do not see that the mere fact that it was difficult to perform makes any difference; they agreed to do a certain thing, so I do not think that evidence is competent."

It. is argued in support of the objection to this ruling that at the time the contract was made it was known to the plaintiff, not only that the work was to be performed in the press room, but a representative of the plaintiff had visited the place to make an examination, from which it appeared that there was in use in the press room another press, and therefore the plaintiff knew, and made its contract with the knowledge, that there was a lack of room for assembling the loose parts. Whatever force there might have been in this proposition if the question had been 'answered, disappears when lack of room for such purpose was not shown, the only testimony on the subject being that the passageway was eight feet wide, and that answer, taken in connection with the proof that the passageway was obstructed by the use made of it by defendant's servants, had no bearing upon the claim that there was not sufficient room for assembling the parts of the machine, for it does not appear that eight feet would not have been enough if it had not been obstructed by the defendant. The plaintiff contracted with reference to the space that existed, and a prior examination would not have disclosed the subsequent conditions alleged to have been created by defendant, and whether it was improperly obstructed was, as we have said, a question for the jury. In view of the fact that the contract contained a stipulation that the time of completion was to be extended if a delay resulted from any cause not within the control of the plaintiff, and as the proof of the plaintiff was directed to facts showing an interference by the defendant after the contract was made, we are of opinion that no observation made before the contract was entered into would charge the plaintiff with knowledge that it was to be obstructed in the prosecution of its work by

any subsequent conduct of the defendant which produced that result, and therefore the question under discussion was properly rejected.

It is also urged by the plaintiff in error that the court improperly left to the jury the question whether the defendant had waived that part of the contract which only required the defendant to pay "at the end of ten days from the satisfactory operation of said press." The court instructed the jury that this meant satisfaction to the buyer, and that with such a provision in a contract, "unless the dissatisfaction is shown to be due to the defendants acting in bad faith, or from an endeavor to perpetrate a fraud, even though the dissatisfaction may be unreasonable, and although the machine might be satisfactory to others, yet the law says that the buyer is the one to be satisfied, and until he is satisfied he is not obliged to pay for it." It is not necessary to now determine the correctness of this instruction as applied to the contract under consideration, for the rule adopted by the court was satisfactory to the plaintiff in error, and it does not object to it, but as the contract does not declare in express terms that the buyer must be satisfied, it is not beyond the realm of logic, in view of the contract by the plaintiff to erect the press "in good running order," that the expression "satisfactory operation," as used by the parties, is synonymous with "good running order," and to be treated as a warranty instead of a condition precedent. No rescission appears to have been attempted in this case until after so long a time had elapsed that an acceptance might be inferred, for the defendant kept the press and used it for eight months before indicating any desire to rescind the contract and return it to the plaintiff. We are of opinion that there was evidence tending to show an acceptance of the machine from which an inference might be drawn that the defendant had waived the right to rescind, if he had such a right because of want of "satisfactory operation," and therefore there was no error in the submission of waiver to the jury.

It is next urged that an error was committed by the trial court in instructing the jury that if they were satisfied the machine was in all respects according to contract; that the ex-

cuse made for not having it up in time was a reasonable one, and within the terms of the contract, then they need not go any further, because, under such circumstances, the plaintiff was entitled to a verdict. The objection urged to this is that if the jury acted on this instruction, it could have found for plaintiff without a finding of acceptance and without a transfer of title to the defendant, although, by the contract, title remained in the plaintiff until acceptance. The excerpt from the charge, which is objected to, is only part of a paragraph, all of which should be read in considering this objection. Immediately preceding this paragraph the court had charged, in speaking of the delay, that "it is not claimed in this case that the delay was due to anything which was done by the plaintiff company," and then, after describing the excuses offered by the plaintiff for the delay, follows the paragraph which contains the words objected to, in which the court stated that the plaintiff claimed that it performed its work exactly as called for by the contract, and that the press was in every respect calculated to do the work it was designed to do, and would have done the work if it had been properly manipulated, and then follows the part objected to. We see no error in this. If the jury found from the evidence that the claim of the plaintiff was true as to the furnishing of a machine according to the terms of the contract, except that it was not put up in the time stipulated, and that it had been made to appear to the satisfaction of the jury that the delay had resulted from causes not within the control of the plaintiff, we can see no reason why the plaintiff was not entitled to its verdict, because if all of the conditions of the plaintiff's contract had been performed, the defendant was bound to pay. This part of the charge did not of course deal with the question of the satisfaction of the buyer, and the criticism which the plaintiff in error makes is that the jury were thus instructed to give the plaintiff a verdict without the consideration of this element. But that matter was fully considered in the succeeding paragraph in which the court instructed the jury as follows: "But the defendant says, even if the machine was erected in time, yet it never did work satisfactory to the defendant, and that

therefore it was never accepted," and then the court proceeded to instruct the jury upon this question. All parts of the charge cannot be delivered at the same time, and in this case the court first stated the claim of the plaintiff, and then that of the defendant, charging them distinctly that the buyer was entitled to be satisfied, and that this would bar the plaintiff unless they should find from the evidence that the defendant by its conduct had waived this covenant, leaving to the jury to say where the truth rested.

The next point raised is that the trial court erroneously charged the jury that the evidence showed "commercial operation" of the press by the defendant, the argument being that it was a disputed question of fact whether the defendant had operated the machine commercially, that is to carry on its business, or whether the operation was experimental. What the court said on this subject was: "It further appears that between the 21st of June, 1909, and the date of that letter, the 24th of February, 1910, the defendant had used this machine commercially. There is evidence before you to show that for a large part of the time during that period they had used the machine in getting out their evening editions. Now, that is a circumstance for you gentlemen to consider in saying whether or not they had accepted that machine; whether or not the use of that machine was inconsistent with their claim that they did not own it. If they did not own it then they had no right to use it for any length of time or any longer than was absolutely necessary to make a reasonable test." We think that what was intended by the use of the word "commercially" is fully explained by what immediately followed, namely, that they had used the machine in getting out their evening editions, of which there was evidence. In the same paragraph the court instructed the jury that if they were satisfied from the evidence that the defendant had not waived the provisions of the contract, and that the machine was not satisfactory, and had only been held a sufficient time to enable the plaintiff to make a reasonable test then the plaintiff could not recover. We fail to see how the jury could have been misled by this charge.

Again it is urged that there was error in refusing to direct a verdict for the defendant. The argument is that under the contract the defendant was not called upon to accept until operation of the press was satisfactory to the defendant, and that while this was the construction of the contract adopted by the court, the motion was denied, not because it appeared that defendant was satisfied, but on the assumption that the defendant was dissatisfied, there being no evidence of defendant's satisfaction. This argument is not consistent with the record, for the court did not put the refusal upon the ground that the defendant was dissatisfied, but upon the ground that it was a question for the jury whether the right of the defendant to have a "satisfactory operation" had not been waived, the court saying, "although they may have expressed their dissatisfaction, they went on and used this machine for months, and it is a question for the jury to say whether that is not a waiver."

The next point argued is that the trial court committed an error in charging the jury that it might infer from the letters of the defendant company, complaining that the machine did not work satisfactorily, that the defendant had accepted the press and had waived the clause in the contract that it must be satisfactory. Counsel for plaintiff in error admits that the court interpreted the contract as to "satisfactory operation" in accordance with his view, but complains that it was error to charge the jury that they might find a waiver of this covenant from the letters of the defendant. What the court said was: "You have the right to infer that the defendants in this case, as they say in their letters, intended to hold the plaintiff for damages under the warranty. If you do so infer, then you would have the right to infer that they had accepted the machine, and if there was an acceptance, of course, then it is a waiver of the clause in the contract that it must be satisfactory to the defendant corporation." We see no error in this part of the charge, for it was an instruction that the jury might infer, as was stated in one of defendant's letters, that it intended to hold the defendant responsible for damages, and that if they found that as a fact it would amount to an acceptance of the

machine. That such an inference might be drawn from the evidence cannot be doubted.

If, under a contract for the purchase of a machine, the purchaser is not required to pay until it operates to his satisfaction, he is not bound to accept and pay for it until he is satisfied, unless the dissatisfaction is based upon some reason not connected with its operation, or is fraudulent in its nature. *Gwynne* v. *Hitchner & Yerkes,* 38 *Vroom* 654. His contract is to accept and pay when he is satisfied with its operation, and he is not bound even if his dissatisfaction in that regard is to some extent unreasonable, but he cannot keep and use the machine and set up want of satisfaction to sustain a defence of partial failure of consideration or non-acceptance. He must either rescind and offer to surrender the machine, or accept it and rely for his remedy upon the recovery of such damages as he may be able to establish because of a breach of the contract. *Woodward* v. *Emmons,* 32 *Vroom* 281.

The remaining assignment argued is that the trial judge committed an error in submitting the question of waiver by the defendant of the clause relating to satisfactory operation. It is urged in support of this position that waiver was not within the issues, not having been pleaded. The declaration averred a general performance by the plaintiff of the conditions imposed upon it by the contract, and if satisfactory operation was an obligation of the plaintiff it averred performance. The plea was general issue, with notice of special matter which does not specify that the defendant intended to contest the averment of general performance by the plaintiff of this condition precedent.

If this contract be interpreted to mean that under one of its conditions the plaintiff was to furnish and install a machine which would operate to the satisfaction of the defendant, the plaintiff having averred performance of that condition, the defendant was required to specify it in his pleading if he intended to deny it, and the action of the trial court in submitting to the jury the question whether the defendant had waived the performance of a condition by the plaintiff, which the de-

fendant had not by its pleadings indicated an intention to contest, was not harmful to the defendant.

We have considered all of the points raised by the plaintiff in error in its brief, and not discovering any error in the record the judgment should be affirmed.

*For affirmance*—GARRISON, SWAYZE, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY, JJ. 11.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, JJ. 3.